UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond District

In re: Michael Robert Ellis, Jr.,        Case No. 12-34083-DOT
      Debtor                              Chapter 7

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of creditor Hitachi Capital America Corp. to dismiss the bankruptcy case filed by debtor Michael Ray Ellis, Jr., pursuant to the terms of § 707(b) of the Bankruptcy Code, 11 U.S.C. § 707(b). The motion was supplemented by Hitachi on February 5, 2013, and again on April 17, 2013.

### Facts, Procedural History, and Positions of the Parties

Debtor's Chapter 7 bankruptcy case was filed on July 10, 2012. Debtor timely filed his schedules and statements on August 7, 2012, and amended them on November 27, 2012. On December 10, 2012, the chapter 7 trustee issued a report that there would be no distribution in the case to unsecured creditors and that $304,679.00 in unsecured claims were scheduled to be discharged without payment. Creditors in the case were instructed not to file proofs of claim.

On December 12, 2012, Hitachi filed the motion to dismiss that is now before the court, arguing that it would be an abuse to grant relief to debtor. Hitachi relied on the provisions of § 707(b) of the Bankruptcy Code, which provides that:

1

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter *whose debts are primarily consumer debts*, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

11 U.S.C. § 707(b)(1)(emphasis added).

Debtor does not dispute that the majority of his debts in this case are primarily consumer debts. The sole issue before the court is whether it would be an abuse for the court to grant relief to debtor. Section 707(b)(2) of the Bankruptcy Code, 11 U.S.C. § 707(b)(2),[1] provides that "[i]n considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists" if a complex statutory formula is satisfied. The formula, commonly referred to as "The Means Test," is condensed into Official Form 22A, which all chapter 7 debtors are required to complete. The form, when properly completed, will result in a determination of whether there is a presumption of abuse pursuant to § 707(b)(2).[2]

---

[1] All subsequent references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.
[2] The complex formula of § 707(b)(2) provides that :
(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts

2

determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--
    (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475 [FN1], whichever is greater; or
    (II) $12,475 [FN1].
    (ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 302 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.
    (II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.
    (III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.
    (IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,875 [FN1] per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).
    (V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor

If a presumption of abuse arises when Form 22A is completed, a debtor may rebut it. Bankruptcy Code § 707(b)(3) provides that in determining whether a debtor has rebutted the presumption of abuse, a court should consider whether a debtor filed a petition in bad faith or whether the totality of circumstances demonstrates abuse:

> **(3)** In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider--
> **(A)** whether the debtor filed the petition in bad faith; or
> **(B)** the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

In addition, the language of the above section suggests that a case in which the debts are primarily consumer debts may be dismissed for abuse even if the presumption of abuse does not arise when the formula of § 707(b)(2) is applied.

---

provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.
    (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--
        (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and
        (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
divided by 60.
    (iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

In its motion, Hitachi initially argued that debtor's Form 22A had been improperly completed because debtor wrongly included his spouse's car payment as a marital adjustment on line 17 but then also deducted that vehicle on line 24 of Form 22A. Hitachi did not object to the inclusion of the vehicle payment in the marital deduction for the auto, as the spouse was solely liable for the payment, but it argued that the ownership expense was not properly taken on line 24, as the car was solely the responsibility of the spouse, citing *In re Sale*, 397 B.R. 281 (Bankr. M.D.N.C. 2007). Hitachi also argued that debtor had improperly included the spouse's vehicle on line 22A, the "vehicle operation/public transportation" deduction. Hitachi argued that if the expenses were removed, a presumption of abuse would result on Form 22A.

Hitachi also argued that in light of the fact that the presumption of abuse arose when the car expenses were properly addressed, the court should use the "totality of circumstances" test set forth by the Fourth Circuit in *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir. 1991), to determine whether debtor had successfully rebutted the presumption as required by § 707(b)(3).

Specifically, Hitachi argued that debtor has the ability to repay his creditors, which it claims is an indication that the petition was filed in bad faith. Hitachi also pointed out that it holds the majority of debtor's

5

approximately $75,000.00 in total unsecured debt.[3] Hitachi alleged that the petition was filed solely for the purposes of discharging the Hitachi debt, as the petition was filed eleven days after Hitachi delivered a statutory notice of default on an underlying civil matter. It urged that the timing of the petition combined with the fact that debtor's primary debt was the large debt to Hitachi is an indication that the petition was filed in bad faith.

Upon receipt of the motion to dismiss, debtor amended his Form 22A to remove the spouse's vehicle from line 24. In addition, debtor added a $285.65 item for "Spouse Auto Related Costs" to the marital deduction of line 17. It also removed the spouse's vehicle from line 22A of Form 22A. With these changes, the computation of Form 22A did not result in a presumption of abuse.

Upon receipt of the amended Form 22A, Hitachi supplemented its motion to dismiss, arguing that debtor should not be allowed to include the spouse's auto expenses as a marital deduction. It asserted that such deductions should be closely scrutinized and should only be allowed if debtor has zero liability for those expenses. Hitachi further argued that if there were any benefit to the household at all, the expenses were not properly included as a marital deduction. Hitachi argued that the auto expenses were for the benefit of debtor, as they enabled the non-debtor spouse to drive to work and

---

[3] The parties are in disagreement over the exact percentage of unsecured debt held by Hitachi, but debtor concedes that it is at least 79.8% of the total unsecured debt and 96.98% of the approximately $70,000.00 in nonpriority unsecured debt.

6

contribute financially to the household. Hitachi argued that if the expenses were removed, the presumption of abuse would arise.

Hearing on the supplemented motion was held on April 10, 2013. On that same day, debtor once again amended his Form 22A. In the amended form, debtor added $462.57 to line 17 as a marital deduction for "Spouse Withholding Taxes." The Debtor also included additional deductions on line 34 for disability insurance and a health savings account. At the hearing, Hitachi argued that debtor may deduct disability insurance and a health savings account, but only if debtor can prove that the expenses are "reasonably necessary." It urged that debtor must put on evidence in support of the inclusion of such expenses. The Debtor's attorney stated that the health savings account and the disability insurance had been on the pay stubs of debtor and his spouse from the inception of the case, but counsel had overlooked them. In addition, Hitachi argued that the filing of three separate Form 22As is an indication of bad faith and a lack of candor.

At the conclusion of the hearing, the court allowed the parties to submit further briefs. Debtor did not submit further briefing, but Hitachi did, reiterating the arguments it made at the hearing. It also pointed out that if the health savings account and disability insurance expenses were removed from Form 22A, the presumption of abuses would arise, but that even if the expenses were allowed to remain, the totality of the circumstances still demonstrates abuse.

After considering the arguments made by the parties, the court requested that debtor submit evidence that the claimed disability insurance and health savings account expenses existed when the plan was filed and could have been included in Form 22A. The Debtor did so, also sending that information to counsel for Hitachi. That evidence shows that the disability insurance and health savings expenses were in fact being incurred at the inception of the case but were not included in Form 22A.

### Analysis and Conclusions

The court must address two issues: 1) whether there is a presumption of abuse under § 707(b)(2) when debtor's Form 22A is properly completed, and 2) whether debtor's case should be dismissed under § 707(b)(3)(A)(3) or § 707(b)(3)(B) even if the presumption of abuse does not arise under § 707(b)(2).

Hitachi bears the burden of proof of proving that debtor's case is abusive and should be dismissed. *See In re Evatt,* 2013 WL 4647219, at *3 (Bankr. D.S.C. August 28, 2013); *In re Vansickel*, 309 B.R. 189, 213 ( Bankr. E.D. Va. 2004).

**Does the presumption of abuse arise pursuant to § 707(b)(2)?**

Hitachi has argued various errors in debtor's Form 22A. The first objection, that debtor had erroneously included the spouse's vehicle payments as a marital deduction on line 17 while including the vehicle's ownership expense on line 24 and including the vehicle's "operation/public

8

transportation expense" on line 22A, was conceded by debtor and was remedied by debtor's filing an amended Form 22A, removing the vehicle from lines 24 and 22A. The court does not find that debtor's initial errors as to the inclusion of the vehicle on lines 24 and 22A of Form 22A, standing alone, justify a finding of abuse, in light of the subsequent amendment.

The second error cited by Hitachi, the inclusion of the spouse's "auto related costs" as a marital deduction in the first amended Form 22A, is also not grounds for a finding of abuse. When debtor removed the vehicle from lines 22A and 24, he searched for a place to deduct the expenses of operating the car. He therefore included the expenses in the marital deduction, calling them "Spouse Auto Related Costs." The payment of those expenses must be either a sole expense of the non-filing spouse or an expense that benefited the household. Either way, the expenses are clearly paid from the income that debtor and his spouse receive, thus making those funds unavailable to pay creditors. The court need not opine here as to whether or where those expenses should be claimed on Form 22A, as the expenses were eventually omitted from Form 22A altogether, but the court cannot find that debtor's search for the proper place on Form 22A to claim the expenses should lead to a finding of abuse.

Finally, Hitachi argues that debtor's addition of health savings account and disability insurance expenses in its second amended Form 22A was improper and should lead to a presumption of abuse. The Debtor has justified

9

those additions to Form 22A by producing evidence that the deductions from income were present from the inception of the case but were not reported initially. The court does not find that amending Form 22A to include those deductions was abusive.

Hitachi also asserts that debtor should have presented evidence to prove that the disability insurance and health savings account were reasonably necessary. The court finds that without any evidence to the contrary, disability insurance and health savings accounts carry a presumption of reasonable necessity. As the burden of proof is on Hitachi to prove abuse, the court rejects Hitachi's argument.

After this in-depth examination of Form 22A, the court finds that debtor's Form 22A is properly completed. Line 55 of debtor's April 10, 2013, Form 22A shows that there is no presumption of abuse pursuant to § 707(b)(2). However, that does not end the court's inquiry.

**Should debtor's case be dismissed under § 707(b)(3) even if the presumption of abuse does not arise under § 707(b)(2)?**

Even if there is no presumption of abuse pursuant to § 707(b)(2), a court may still find that it would be an abuse to grant relief to a debtor. Section 707(b)(3) provides that when a court is evaluating an assertion pursuant to § 707(b)(1) that granting relief would be an abuse, it may consider 1) whether a debtor filed his petition in bad faith or 2) the totality of the circumstances.

In this case, Hitachi argues that debtor filed his case in bad faith because the debtor filed three separate Form 22As, because debtor filed his case to avoid a large single debt, and because debtor has the ability to repay his creditors. Hitachi cites *McDow v. Smith*, 295 B.R. 69 (E.D. Va. 2003) for the proposition that this court may dismiss a debtor's case for bad faith.

*Smith* was not based upon a § 707(b) motion to dismiss for abuse but was based upon a motion pursuant to § 707(a) to dismiss for cause. However, the case sets forth a standard which the court may use in determining whether a case should be dismissed for bad faith. The court in *Smith* first noted that the Fourth Circuit has rejected "the adoption of *per se* dismissal rule if a debtor has the ability to repay his debts substantially under 11 U.S.C. § 707(b), which governs consumer debts. . . In doing so, the Fourth Circuit relied on the legislative history of § 707(a) to determine that neither § 707(a) nor § 707(b) permitted a debtor's ability to pay to be the sole ground for dismissal." 295 B.R. at 79 n.21, citing *Green v. Staples (In re Green)*, 934 F.2d 568, 572 (4th Cir. 1991). Rather, the court in *Smith* adopted the "totality of the circumstances" approach in determining bad faith and cited eleven factors typically considered in such an approach:

> (1) The debtor's concealment or misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing;
> (2) The debtor's lack of candor and completeness in his statements and schedules, such as the inflation of his expenses to disguise his financial well-being;

    (3) The debtor has sufficient resources to repay his debts, and leads a lavish lifestyle, continuing to have excessive and continued expenditures;
    (4) The debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action;
    (5) The debtor's petition is part of a "deliberate and persistent pattern" of evading a single creditor;
    (6) The debtor is "overutilizing the protection of the Code" to the detriment to his creditors;
    (7) The debtor reduced his creditors to a single creditor prior to filing the petition;
    (8) The debtor's lack of attempt to repay creditors;
    (9) The debtor's payment of debts to insider creditors;
    (10) The debtor's "procedural gymnastics" that have the effect of frustrating creditors;
    (11) The unfairness of the debtor's use of the bankruptcy process.

295 B.R. at 80 n.22. The court then noted that the dismissal remedy was an extreme one and should be sparing used. It quoted approvingly the Sixth Circuit's admonition in *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991), that dismissals for lack of good faith "should be confined carefully and...generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." 295 B.R. at 81 (citing *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1128 (6th Cir. 1991)).

    Also instructive on the abuse issue is a recent opinion issued by Judge Kenney of this court. In *In re Matthews,* No. 13-10521-BFK, 2013 WL

1385221 (Bankr. E.D. Va. April 3, 2013), the court utilized the analysis set forth by the Fourth Circuit in the pre-BAPCPA[4] case of *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir. 1991), to determine whether a debtor's case should be dismissed for cause under § 707(b), which at that time provided for dismissal for "substantial abuse." In *Green v. Staples*, the Fourth Circuit court set forth five factors to be used in determining abuse:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
> (5) Whether the petition was filed in good faith.

934 F.2d at 572. Judge Kenney noted that the fifth element of the test, whether the petition was filed in good faith, requires a synthesis of the first four factors. 2013 WL 1385221, at *10. Thus, in undertaking an evaluation under § 707(b)(3), the analysis used by the Fourth Circuit in the *Green* case will encompass both the good faith and totality of the circumstances elements of § 707(b)(3)(A) and (B).

In *Calhoun v. United States Trustee*, 650 F.3d 338 (4th Cir. 2011), the Fourth Circuit approved the bankruptcy court's use of the *Green* factors in undertaking analysis under § 707(b)(3). In determining whether there is an abuse under § 707(b)(3), courts in the Fourth Circuit consistently rely upon

---

[4] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (Apr. 20, 2005).

13

the *Green* factors, and this court sees no reason to depart from that practice. *See, e.g. In re Bogart*, 2012 WL 3913093, at *2 (E.D. Va. Sept. 7, 2012); *Bankr. Admin'r. v. Gregory,* 471 B.R. 823, 829 (E.D.N.C. 2012); *In re Matthews,* No. 13-10521-BFK, 2013 WL 1385221, at *8 (Bankr. E.D. Va. Apr. 3, 2013); *In re Krawczyk,* 2012 WL 3069437, at *3 (Bankr. E.D.N.C. July 27, 2012). Therefore, the court will analyze Hitachi's motion using the *Green* and *Smith* factors.

Regardless of which set of factors the court considers, *Green* or *Smith*, it is clear that in this case, the behavior of debtor does not come close to the level of misconduct required to dismiss his case for abuse. Hitachi has proven only that debtor misplaced automobile expenses on Form 22A, remedied that error, and then added other expenditures that should have been on the form from the inception of the case. The Debtor was not seeking to hide assets, income or expenses. There has been no evidence that he was living a lavish lifestyle or that he incurred his debt by fraud.

Hitachi argues that debtor has engaged in the prohibited "procedural gymnastics" of the *Smith* test. It appears to the court that debtor has not engaged in procedural gymnastics but instead has attempted to comply with the requirements of Form 22A by amending it so that it is accurate. By doing so, debtor has actually deprived himself of any deduction whatsoever for the expenses of his spouse's automobile other than the actual payments for the debt secured by that vehicle. While debtor initially could have been more

14

attentive to the intricacies of completing Form 22A, the omissions therein are not nearly so egregious as to require dismissal for abuse.

Hitachi also argues that because it is by far debtor's largest unsecured creditor, and because debtor filed its chapter 7 case within eleven days of debtor's receipt of a default notice on Hitachi's civil matter against it, the court should dismiss the case for abuse. The Debtor concedes that Hitachi holds at least 96.98% of debtor's nonpriority unsecured debt, but there is no evidence as to the timing of the petition relative to Hitachi's suit against debtor. However, even if Hitachi's allegation as to the timing were correct, that alone would not satisfy the requirements of the *Green* or *Smith* tests. Hitachi cites factor four of the *Smith* test, which looks to see whether a debtor filed his petition "to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action; . . ." However, that factor requires a debt "incurred through conduct akin to fraud, misconduct, or gross negligence…" and there is no proof of that in this case. Therefore, the court finds that factor to be inapplicable.

In summary, an analysis of the *Green* and *Smith* factors does not mandate a finding of abuse sufficient for dismissal under § 707(b)(3).

## Conclusion

The court finds that Hitachi has not carried its burden of proving abuse under § 707(b). Therefore,

15

      IT IS ORDERED that the motion to dismiss of Hitachi Capital America Corp. is DENIED.

Signed: September 25, 2013

                                  /s/ Douglas O. Tice Jr.
                            United States Bankruptcy Judge

Copies to:

Lisa Marie Bass
Shook, Hardy & Bacon, LLP
1155 F Street, NW
Suite 200
Washington, DC 20004

Jacqueline W. Sharman
Coates & Davenport
5206 Markel Road
Richmond, VA 23230
Michael Robert Ellis, Jr.
6287 Indian Trails Court
Mechanicsville, VA 23111

Harry Shaia, Jr
Spinella, Owings & Shaia, P.C.
8550 Mayland Drive
Richmond, VA 23294

Judy A. Robbins, 11
Office of the U.S. Trustee - Region 4 -R
701 E. Broad Street, Suite 4304
Richmond, VA 23219